IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GRANT KELLY,                          :

      Plaintiff,                 :
                                                    Case No. 3:06cv114
      vs.                        :
                                           JUDGE WALTER HERBERT RICE
CITY OF XENIA,                        :

      Defendant.                 :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #25); DECISION AND ENTRY
SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART
DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF KAREN
DUNLEVEY (DOC. #37); JUDGMENT TO BE ENTERED IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

The basic factual background giving rise to this litigation is not in dispute.

Plaintiff Grant Kelly ("Plaintiff" or "Kelly") was hired by Defendant City of Xenia

("Defendant" or "Xenia") in 1999, as a computer technician.[1]  He was discharged

by Xenia on February 28, 2006, as a result being charged with possession of

cocaine and criminal tools, after police officers employed by Xenia had executed a

search warrant at his residence.  While employed by Xenia, Kelly was paid

overtime only in the aftermath of a tornado that struck Xenia in 2000.

---

[1]Xenia had previously employed Kelly as an independent contractor.

In his Complaint (Doc. #1), Plaintiff has set forth a claim for relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., alleging that the Defendant violated that statute by neglecting to compensate him at the rate of time and one-half for all hours in excess of 40 that he worked in a given week.[2] Doc. #1 at ¶¶ 13 and 17. The Plaintiff seeks to recover compensatory and liquidated damages, as well as attorney's fees. Id. at ¶¶ 19-21.

This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. #25) and its Motion to Strike the Affidavit of Karen Dunlevey (Doc. #37). As a means of analysis, the Court will initially discuss the Defendant's request that the Court strike the Affidavit of Karen Dunlevey ("Dunlevey"), Plaintiff's counsel, following which it will turn to the Defendant's motion seeking summary judgment.

## I. Defendant's Motion to Strike the Affidavit of Karen Dunlevey (Doc. #37)

To oppose Defendant's Motion for Summary Judgment (Doc. #25), Plaintiff has submitted, inter alia, Dunlevey's Affidavit (Doc. #35).[3] With her Affidavit, Dunlevey has attempted to authenticate correspondence between herself and Xenia's former counsel and has set forth conclusions that she drew from her review of documents produced by Defendant. Xenia has requested that the Court

---

[2]Initially, Plaintiff had also set forth claims of failure to accommodate (Second Claim for Relief) and disability discrimination (Third Claim for Relief). See Doc. #1 at ¶¶ 22-34. The parties subsequently stipulated the dismissal of those claims with prejudice. See Doc. #20.

[3]A copy of that Affidavit is also appended to Plaintiff's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #30). Although That document was not executed by a Notary, Plaintiff has since submitted an executed copy of same. See Doc. #35.

strike the entirety of that Affidavit, except ¶¶ 1 and 2, in which Dunlevey

identified herself.[4]  As a means of analysis, the Court will initially set forth its ruling

on the aspect of Defendant's request to strike same as it relates to Dunlevey's

efforts to authenticate documents, following which it will turn Xenia's motion as it

pertains to her conclusions.

With ¶ 6 of her Affidavit, Dunlevey has attempted to authenticate

correspondence between herself and Defendant's former counsel.  Defendant has

moved to strike that aspect of Dunlevey's Affidavit, arguing that she is attempting

to interject herself as a witness in this litigation.  The information contained in ¶ 6

is pertinent to the issue of whether the evidence raises a genuine issue of material

fact, concerning the question of whether Plaintiff exhausted the remedies available

to him, before he initiated this litigation.  Defendant has argued that it is entitled to

summary judgment because Plaintiff failed to exhaust those remedies.  For reasons

which follow, this Court concludes that Plaintiff was not required to exhaust

administrative remedies before initiating this litigation under the FLSA.  Therefore,

it was not necessary for Dunlevey to attempt to demonstrate, through her own

---

[4]Dunlevey has utilized ¶ 4 of her Affidavit in an effort to authenticate Defendant's
Employee Handbook.  Defendant has moved to strike that portion of Dunlevey's
Affidavit.  This Court overrules that branch of Defendant's to Strike Affidavit of
Karen Dunlevey (Doc. #37), as moot, given that Plaintiff authenticated the
Employee Handbook during his deposition.  Indeed, that document is an exhibit to
his deposition.  See Doc. #27 at Ex. F.  Somewhat relatedly, Dunlevey sets forth,
in ¶ 5 of her Affidavit, what she deems to be the contents of page 5 of the
Employee Handbook.  This Court is quite capable of reading page 5 of the
Handbook and deciding whether it raises a genuine issue of material fact,
regardless of whether counsel has put her views on the question under oath or has
merely included those views as argument in a memorandum.  Therefore, since it
will not use ¶ 5 of Dunlevey's Affidavit when ruling on Defendant's request for
summary judgment, the Court overrules, as moot, the aspect of Defendant's
motion, as it pertains to that paragraph.

affidavit, that the evidence raises a genuine issue of material fact concerning exhaustion. Consequently, the Court will not utilize ¶ 6 of Dunlevey's Affidavit when ruling upon Defendant's Motion for Summary Judgment (Doc. #25), and overrules, as moot, this branch of Defendant's motion to strike.

In McCarthy v. Madigan, 503 U.S. 140 (1992), the Supreme Court addressed the question of when courts should require a plaintiff to exhaust his administrative remedies, before initiating a lawsuit setting forth a federal claim. Therein, the Court held that a federal prisoner was not required to exhaust the remedies afforded by the prison grievance system, before initiating a claim for monetary damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), predicated upon the alleged denial of medical care by prison employees. The McCarthy Court initially noted that congressional intent is of "paramount importance" and that, "where Congress has not clearly required exhaustion, sound judicial discretion governs." 503 U.S. at 144. The Court also recognized that "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." Id. at 145. "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." Id. at 146. The McCarthy Court also indicated that the interests of the individual weigh heavily against requiring administrative exhaustion, when the administrative remedy may be inadequate due to doubt about the agency's power to grant effective relief. Id. at 147.

Congress did not establish administrative remedies which must be exhausted before an individual initiates an action under the FLSA, nor is there any indication that Congress intended to require the exhaustion of administrative remedies, supplied by another level of government, before an individual could bring such an action under that statute. In addition, although Defendant indicates that Plaintiff could have utilized the Xenia Civil Service Commission "to air his grievances regarding his exemption status, if he had any such legitimate grievance" (Doc. #25 at 19), Xenia has not indicated whether the Xenia Civil Service Commission is a creature of Ohio statutes or of Xenia municipal ordinances. Defendant has also failed to inform this Court about the content of the statutes or ordinances creating same. For instance, Defendant has not indicated whether the Xenia Civil Service Commission is empowered to award compensatory and liquidated damages for a violation of the FLSA. In the absence of such information, this Court is unable to assess whether the remedy of an appeal to the Xenia Civil Service Commission is adequate. Moreover, courts have uniformly held that the Equal Pay Act, 29 U.S.C. § 206(d), which is part of the FLSA,[5] does not require the exhaustion of administrative remedies. County of Washington v. Gunther, 452 U.S. 161, 175 n. 14 (1981); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1527 (11th Cir. 1992); Willis v. Morris, 1995 WL 613642 (6th Cir. 1995), cert. denied, 517 U.S. 1104 (1996). Accordingly, this Court concludes that Plaintiff was not required to exhaust the remedies afforded by the Xenia Civil Service Commission.

---

[5]See e.g., Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 161 (6th Cir. 2004) (noting that the Equal Pay Act amended the FLSA).

Additionally, Defendant argues that the Court must strike ¶ 3 of Dunlevey's Affidavit, wherein she states:

> 3. I have reviewed the documents produced by the [Defendant] in this action, and attest that nowhere in the [Defendant's] records is [Plaintiff's] compensation ever reflected as either a weekly, monthly or annual "salary" figure; rather, it is <u>always</u> reflected as an hourly rate.

Doc. #35 at ¶ 3 (emphasis in the original). Defendant argues that this paragraph of Dunlevey's Affidavit must be stricken, because she lacks expertise as a human resources professional necessary to provide such information and that, in any event, she would become a witness, if the Court were to permit her to provide such information. For a more fundamental reason, this Court strikes and will not consider ¶ 3 of Dunlevey's Affidavit when ruling on Defendant's Motion for Summary Judgment (Doc. #25).

Rule 56(e)(1) provides that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." That part of Rule 56(e) "means[, <u>inter alia</u>,] that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient."[6] 10A Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2722 at 380-81. Herein, rather than exhibit the documents produced during discovery by Xenia, Dunlevey merely sets forth her interpretation of them, which contravenes Rule 56(e)(1). Accordingly, the Court sustains Defendant's Motion to Strike the Affidavit of Karen Dunlevey (Doc. #37), as it relates to ¶ 3 of that document.

---

[6]Of course, the exhibits must also be authenticated by the affidavit. That requirement of Rule 56(e) is not implicated herein.

Based upon the foregoing, the Court sustains in part and overrules, as moot, in part Defendant's Motion to Strike the Affidavit of Karen Dunlevey (Doc. #37). In particular, the Court has sustained that motion as it relates to ¶ 3 of Dunlevey's affidavit and overruled it, as moot, as it relates to ¶¶ 4-6 of that document.

## II.  Defendant's Motion for Summary Judgment (Doc. #25)

As an initial matter, the Court will set forth the procedural standards it must apply whenever it rules on a motion seeking summary judgment.  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present

evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992)

(citation omitted).  Of course, in determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at

255 (emphasis added).  If the parties present conflicting evidence, a court may not

decide which evidence to believe, by determining which parties' affiants are more

credible; rather, credibility determinations must be left to the fact-finder.  10A

Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  In ruling on a

motion for summary judgment (in other words, in determining whether there is a

genuine issue of material fact), "[a] district court is not … obligated to wade

through and search the entire record for some specific facts that might support the

nonmoving party's claim."  Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  See also L.S. Heath & Son, Inc.

v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco

Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record

in search of evidence to support a party's opposition to summary judgment ….").

Thus, a court is entitled to rely, in determining whether a genuine issue of material

fact exists on a particular issue, only upon those portions of the verified pleadings,

depositions, answers to interrogatories and admissions on file, together with any

affidavits submitted, specifically called to its attention by the parties.


While not challenging Plaintiff's assertion that he was not paid time and one-

half for the hours over 40 which he worked on a weekly basis, as required by 29

U.S.C. § 207(a)(1),[7] Defendant argues that it is entitled to summary judgment on this claim, because Plaintiff has been exempted from the requirement that he be paid overtime by § 13(a)(1) and (17) of the FLSA, 29 U.S.C. § 213(a)(1) and (17). Alternatively, Defendant argues that it is entitled to summary judgment, because the Plaintiff failed to exhaust his administrative remedies. In addition, Defendant asserts that, even if it is not entitled to summary judgment on the entirety of Plaintiff's claim, the Court should enter summary judgment in its favor of Plaintiff's request for liquidated damages, because the evidence fails to raise a genuine issue of material fact as to whether it willfully violated the FLSA. As a means of analysis, the Court will initially address the parties' arguments concerning the question of whether the Plaintiff is exempt from the FLSA.

As indicated, Defendant argues that it is entitled to summary judgment, because the Plaintiff is exempt from the requirement in the FLSA that he be paid time and one-half for hours he worked in excess of 40 in a given week by virtue of § 213(a)(1) and (17), which provides:

(a) Minimum wage and maximum hour requirements
The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—
(1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of

---

[7]Section 207(a)(1) provides:
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter [2] of chapter 5 of Title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities); or

*                    *                    *

(17) any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—

    (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

    (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

    (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or

    (D) a combination of duties described in subparagraphs (A), (B), and

    (C) the performance of which requires the same level of skills, and

who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

The Department of Labor ("DOL") has added flesh to that statutory language, as it relates to computer systems analysts and the like, by adopting 29 CFR § 541.400, which provides:

(a) Computer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field are eligible for exemption as professionals under section 13(a)(1) of the Act and under section 13(a)(17) of the Act. Because job titles vary widely and change quickly in the computer industry, job titles are not determinative of the applicability of this exemption.

(b) The section 13(a)(1) exemption applies to any computer employee compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers

other than the Federal Government), exclusive of board, lodging or other facilities, and the section 13(a)(17) exemption applies to any computer employee compensated on an hourly basis at a rate not less than $27.63 an hour. In addition, under either section 13(a)(1) or section 13(a)(17) of the Act, the exemptions apply only to computer employees whose primary duty consists of:

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or
> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

As an initial matter, Plaintiff argues that the exemption set forth in § 213(a)(17) is inapplicable, because he has never been compensated at a rate equivalent to or greater than $27.63 per hour. It is uncontroverted that Xenia did not compensate Kelly at that rate. Moreover, the DOL has explicitly provided that "the section 13(a)(17) exemption applies to any computer employee compensated on an hourly basis at a rate not less than $27.63 an hour." 29 CFR § 541.400(b). Accordingly, this Court agrees with Plaintiff that the exemption set forth in § 213(a)(17) is inapplicable and turns to the question of whether he is exempt under § 213(a)(1).

In order for a computer employee to be exempt under § 213(a)(1), the employer must establish that the employee is "compensated on a salary … basis at a rate of not less than $455 per week," 29 CFR § 541.400(b), and that he is

"employed in a bona fide … professional capacity."[8]  29 U.S.C. § 213(a)(1).  Of course, exemptions under the FLSA are to be narrowly construed against the employer.  <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960).  In <u>Acs v. Detroit Edison Co.</u>, 444 F.3d 763 (6th Cir. 2006), the court held that "[t]o establish an overtime exemption for executive, administrative or professional employees, 29 U.S.C. § 213(a)(1), an employer must satisfy three tests: 'a (1) duties test; (2) salary level test; <u>and</u> (3) salary basis test,' <u>Takacs v. Hahn Auto. Corp.</u>, 246 F.3d 776, 779 (6th Cir. 2001)."  <u>Id</u>. at 767 (emphasis added).  To be entitled to summary judgment on the basis that its employee is exempt from the overtime requirement, the employer "must demonstrate 'that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.'"  <u>Thomas v. Speedway SuperAmerica, LLC</u>, 506 F.3d 501 n. 2 (quoting Rule 56(c); brackets in the original).  As a means of analysis, this Court will address the three tests mentioned by the Sixth Circuit in <u>Acs</u> in the above order*.*  If the Defendant has not demonstrated that the evidence fails to raise a genuine issue of material fact on any of those three tests, the Court must deny its request for summary judgment.

The first of those tests is the duties test, which, in this litigation, requires the Court to determine whether the evidence raises a genuine issue of material fact as to whether Plaintiff was "employed in a bona fide … professional capacity."  29 U.S.C. § 13(a)(1).  According to the Plaintiff, that issue must be resolved by applying 29 CFR § 541.300, which provides, in pertinent part:

---

[8]<u>See</u> <u>Martin v. Indiana Michigan Power Co.</u>, 381 F.3d 574, 578 (6th Cir. 2004) (noting that the employer has the burden of establishing that its employee is exempt from the overtime requirement of the FLSA).

> (a) The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> \*                    \*                    \*
>
> (2) Whose primary duty is the performance of work:
>> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction ....

Plaintiff also contends that there is a genuine issue of material fact concerning the question of whether he has the requisite educational background. Defendant, in contrast, argues that, to determine whether Plaintiff is a professional employee, this Court must apply the four factors set forth in 29 CFR § 541.400(b), quoted in its entirety above, and asserts that the evidence fails to raise a genuine issue of material fact as to whether Kelly qualifies as a professional employee under those factors. For reasons which follow, this Court agrees with both points raised by Defendant and, thus, concludes that the first test for exemption mentioned by the Sixth Circuit in <u>Acs</u> has been met, and that, therefore, no genuine issue of material fact exists thereon.

As an initial matter, the DOL has expressly provided in § 541.400(b) that the exemptions set forth in § 213(a)(1) and (17) "apply only to computer employees whose primary duty consists of:"

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or
> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

The Plaintiff has not argued that the DOL misinterpreted the FLSA when it adopted § 541.400(b) or that the Court should for any other reason decline to apply that provision of the CFR.  Indeed, Plaintiff has not even acknowledged the existence of § 541.400(b).  A fundamental canon of statutory interpretations is that the specific provision takes precedence over a general one.  United States v. Perry, 361 F.3d 519, 535 (6th Cir. 2004).  That rule of statutory construction directs this Court to apply § 541.400(b), rather than § 541.300.  Moreover, since it was adopted in 2004, the few decisions addressing the question have held that § 541.400(b) must be utilized to determine whether a computer employee is exempt under § 213(a)(1).[9]  See e.g., Bergquist v. Fidelity Information Services, Inc., 399 F. Supp.2d 1320, 130 (M.D.Fla. 2005), affirmed, 197 Fed. Appx. 813 (11th Cir. 2006).  Accordingly, this Court concludes that it must utilize the four factor test set forth in § 541.400(b) to determine whether Kelly is exempt, under § 213(a)(1), from the overtime requirements of the FLSA.

As indicated, Xenia argues that the evidence establishes, as a matter law, that Plaintiff qualified as an exempt computer employee under the four factors set forth in § 541.400(b).  Kelly has not addressed that question.  Construing the evidence in the manner most favorable to the Plaintiff, this Court agrees with the Defendant.  Plaintiff was the employee of Xenia who knew the most about its computer network and server.  Plaintiff's Dep. at 152.  During his deposition,

---

[9]In Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir. 2004), the Sixth Circuit applied the then-applicable regulations, set forth in 29 CFR § 541.3, when deciding whether a computer employee was an exempt professional employee under § 213(a)(1).  However, given that those regulations were repealed when the DOL amended the regulations and adopted § 541.400 in 2004, Martin is not controlling in this litigation.  See Bobadilla v. MDRC, 2005 U.S. Dist. Lexis at *30 n. 8 (S.D.N.Y. 2005).

Plaintiff explained how he utilized that knowledge while employed by Xenia. For instance, when Xenia upgraded its server or computer software, Plaintiff was involved at all stages, including researching the various options available to Xenia, recommending what products to purchase and implementing the upgrades. Id. at 36-38. He also maintained all of the computer systems utilized by Xenia. Id. at 44-47. Indeed, his maintenance of Xenia's servers and operating systems included responsibility for ensuring that their design specifications would work with the rest of Defendant's computer system. Id. at 149. Kelly also provided advice as to what equipment and software the Xenia Police Department should purchase for mobile data terminals for its police cruisers, as well as testing the program. Id. at 69, 134-335 and 140-42. In addition, when Xenia decided to upgrade its Cisco Systems network, Plaintiff, in cooperation with engineers from Cisco, formulated what that upgrade would be and made recommendations to Xenia concerning same. Id. at 88-90, 101. Quite simply, the foregoing causes this Court to conclude that the Plaintiff qualifies as an exempt computer employee under § 541.400(b).

The second of the three tests identified by the Sixth Circuit in Acs, the salary level test, requires that this Court determine whether the Plaintiff was compensated at a weekly rate of not less than $455. It is uncontroverted that, throughout his employment with Xenia, Kelly was compensated at that rate. Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact as to Plaintiff's exemption, concerning the second of the three tests.

The third of the three tests identified by the Sixth Circuit in Acs, the salary basis test, requires that this Court determine if the evidence raises a genuine issue

of material fact concerning the question of whether Kelly was paid on a "salary

basis." That term is defined by 29 CFR § 541.602, which provides:

(a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

(b) Exceptions. The prohibition against deductions from pay in the salary basis requirement is subject to the following exceptions:

(1) Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

(2) Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability. The employer is not required to pay any portion of the employee's salary for full-day absences for which the employee receives compensation under the plan, policy or practice. Deductions for such full-day absences also may be made before the employee has qualified under the plan, policy or practice, and after the employee has exhausted the leave allowance thereunder. Thus, for example, if an employer maintains a short-term disability insurance plan providing salary replacement for 12 weeks starting on the fourth day of absence, the employer may make deductions from pay for the three days of absence before the employee qualifies for benefits under the plan; for the twelve weeks in

which the employee receives salary replacement benefits under the plan; and for absences after the employee has exhausted the 12 weeks of salary replacement benefits. Similarly, an employer may make deductions from pay for absences of one or more full days if salary replacement benefits are provided under a State disability insurance law or under a State workers' compensation law.

(3) While an employer cannot make deductions from pay for absences of an exempt employee occasioned by jury duty, attendance as a witness or temporary military leave, the employer can offset any amounts received by an employee as jury fees, witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption.

(4) Deductions from pay of exempt employees may be made for penalties imposed in good faith for infractions of safety rules of major significance. Safety rules of major significance include those relating to the prevention of serious danger in the workplace or to other employees, such as rules prohibiting smoking in explosive plants, oil refineries and coal mines.

(5) Deductions from pay of exempt employees may be made for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules. Such suspensions must be imposed pursuant to a written policy applicable to all employees. Thus, for example, an employer may suspend an exempt employee without pay for three days for violating a generally applicable written policy prohibiting sexual harassment. Similarly, an employer may suspend an exempt employee without pay for twelve days for violating a generally applicable written policy prohibiting workplace violence.

(6) An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment. In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement. However, employees are not paid on a salary basis within the meaning of these regulations if they are employed occasionally for a few days, and the employer pays them a proportionate part of the weekly salary when so employed.

(7) An employer is not required to pay the full salary for weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act. Rather, when an exempt employee takes unpaid leave under the Family and Medical Leave Act, an employer may pay a proportionate part of the full salary for time actually worked. For example, if an employee who normally works 40 hours per week uses

four hours of unpaid leave under the Family and Medical Leave Act, the employer could deduct 10 percent of the employee's normal salary that week.

(c) When calculating the amount of a deduction from pay allowed under paragraph (b) of this section, the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed by the employee. A deduction from pay as a penalty for violations of major safety rules under paragraph (b)(4) of this section may be made in any amount.

The Plaintiff argues that he was not paid on a salary basis, because his salary was "subject to reduction because of variations in the quality or quantity of the work performed."[10]  Plaintiff contends that an employee is subject to such a reduction and, thus, not paid on a salary basis, if the employer has an actual practice of salary deductions, or an employee is compensated under a policy that clearly communicates a significant likelihood of deductions.  See Doc. #30 at 5. The DOL previously advocated such an approach, which the Supreme Court approved in Auer v. Robbins, 519 U.S. 452 (1997).  See also Takacs v. Hahn Auto. Corp., 246 F.3d 776 (6th Cir. 2001).  However, with the adoption of 29 CFR § 541.603, in 2004, the DOL narrowed that approach so that an employee would

---

[10]In particular, Plaintiff contends that the "Absence from Work" policy set forth in Xenia's Employee Handbook rendered his compensation subject to reduction.  That policy provides:

> ABSENCE FROM WORK (CS) Attendance at work is controlled by the work schedule as established by your supervisor.  Absences must be reported to your supervisor in advance (if possible) and may or may not be approved depending on the circumstances.  Absences without pay for periods of one (1) work day or less may be approved by the Department Head.  Absences without pay for periods of more than one (1) day must be submitted to the Appointing Authority in advance for consideration and may or may not be granted.  Absence for more than three (3) days without approval may be cause for discipline up to and including discharge.

Plaintiff's Dep. at Ex. F, p. 5.

be deemed not to have been compensated on a salary basis, <u>only</u> if the employer has an <u>actual</u> practice of salary deductions.  Section 541.603 provides in relevant part:

> (a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.  The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.
> (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions.  Employees in different job classifications or who work for different managers do not lose their status as exempt employees.  Thus, for example, if a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption; engineers at other facilities or working for other managers, however, would remain exempt.

Thus, with the adoption of § 541.603, the DOL has eliminated the exclusion from the exemption in instances when an employee is compensated under a policy that clearly communicates a significant likelihood of deductions.  <u>Baden-Winterwood v. Life Time Fitness, Inc.</u>, 566 F.3d 618 (6th Cir. 2009).  Herein, there is no evidence that Plaintiff or any other exempt employee of Xenia had his or her salary reduced as a result of its "Absence from Work" policy.  Therefore, this Court rejects the Plaintiff's assertion that he was not paid on a salary basis, because his salary was

"subject to reduction because of variations in the quality or quantity of the work performed."[11]

Alternatively, Plaintiff argues that he was not paid on a salary basis, because the evidence raises a genuine issue of material fact as to whether Xenia intended Plaintiff to be an exempt employee. For instance, Plaintiff contends that he was consistently told he was paid on an hourly basis. In support of that assertion, Plaintiff points out that, when hired, he signed an agreement which stipulated his compensation as an hourly rate and that his annual raises were also stated as hourly rates. While all of that is uncontroverted, it is also undisputed that Xenia computed the salaries for all its exempt employees utilizing an hourly rate. Declaration of Mark Bazelak ("Bazelak") at ¶ 5.[12] It is also undisputed that, with one exception, Kelly was paid the same amount on biweekly basis as a salaried employee, without being paid time and one-half.[13] Id. at ¶ 5. The exception is for

---

[11]Prior to the 2004 adoption of 29 CFR § 541.603, an employer lost its exemption if its employee's salary was subject to reduction because of variations in the quality or quantity of the work performed. An employee was subject to such a reduction, if the employer had an actual practice of salary deductions, or the employee was compensated under a policy that clearly communicated a significant likelihood of such deductions. Thus, paying employees under a policy that clearly communicated such a likelihood would cause an employer to lose the exemption. Under § 541.603, however, "a clearly communicated policy permitting or prohibiting improper deductions" is but one of five listed factors to consider when determining whether an employer has an "actual practice of making improper deductions," and, thus, has lost its exemption.

[12]Bazelak is the Finance Director for Xenia. His Declaration is Ex. A to Defendant's Motion for Summary Judgment (Doc. 25).

[13]A review of Plaintiff's time records, which were Ex. D to his deposition, reveals that he was permitted to accumulate compensatory time, on an hour for hour basis, for the hours in excess of 80 that he worked in a given two-week period. The Employee Handbook provides that exempt employees may accumulate compensatory time on that basis.

a brief period in 2000, when Xenia compensated all of its exempt employees for the overtime they worked after a tornado struck that city in 2000. The amount of compensation that Plaintiff and other exempt employees were paid was reimbursed by FEMA. Id. at ¶ 11. Xenia decided to pay its exempt employees overtime in the wake of the tornado in 2000, because of the unique circumstances presented by the tornado and the need for extra manpower during the recovery period. Id. at ¶ 12. That was the only instance, of which Bazelak is aware, when Xenia paid its exempt employees for overtime. The foregoing does not cause this Court to conclude that there is a genuine issue of material fact as to whether Xenia, therefore, deemed him to be an exempt employee.[14]

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Plaintiff was exempted from the overtime requirement by § 213(a)(1).[15]

Accordingly, it sustains the Defendant's Motion for Summary Judgment (Doc. #25). The Court directs that judgment be entered in favor of the Defendant and against the Plaintiff.

---

[14]Kelly also cites the part of the Employee Handbook in which exempt employees are listed and notes that his position is not included in that list. Given that Plaintiff was hired for a newly-created position in 1999 (Bazelak Declaration at ¶ 3), and the Employee Handbook had last been revised five years earlier, it is not surprising that Kelly's position was not on the list.

[15]As a consequence it is not necessary for the Court to address the question of whether Xenia willfully violated the FLSA. Above, in the context of ruling on Defendant's request to strike Dunlevey's Affidavit, the Court has concluded that Plaintiff was not required to exhaust administrative remedies.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


August 25, 2009


/s/ Walter Herbert Rice

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.